```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
YADIRA GUZMAN et al.,                              :

                       Plaintiffs,                 :
                                                            OPINION AND ORDER
           -v.-                                    :

THREE AMIGOS SJL INC. et al.,                      :    14 Civ. 10120 (GBD) (GWG)

                       Defendants.                 :
---------------------------------------------------------------x
EVELYN RODRIGUEZ et al.,                           :

                       Plaintiffs,                 :
                                                        15 Civ. 823 (GBD) (GWG)
           -v-                                     :

THREE AMIGOS SJL INC. et al.,                      :

                       Defendants.                 :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Yadira Guzman, Daniris Espinal, Evelyn Rodriguez, Janine Bonderenko, Jennifer Eller, and Kayla Atkins have filed the above-referenced actions against their former employers, Three Amigos SJL Inc., Three Amigos SJL Rest., Inc., Times Square Restaurant No. 1, Inc., Times Square Restaurant Group, Ltd., Selim "Sam" Zherka, and Dominica O'Neill for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law. On April 1, 2015, the two actions were consolidated for all purposes, including trial, under docket number 14 Civ. 10120.[1]  See Order Consolidating Cases, filed Apr. 1, 2015 (Docket # 14 in 14 Civ. 10120 and Docket # 12 in 15 Civ. 823).  Plaintiffs now move to have this case

---

[1] Unless otherwise specified, citations to the docket refer to filings under docket number 14 Civ. 10120.

1

conditionally approved as a collective action with notice being sent to "all individuals who worked at Cheetah's as entertainers."[2]  Pl. Mem. at 12.  For the following reasons, plaintiffs' motion is granted.

I.      BACKGROUND

   A.      Facts Alleged by Plaintiffs

The following facts have been alleged by plaintiffs in their declarations filed as part of the instant motion:

Defendants operate a business called Cheetahs Gentlemen's Club & Restaurant ("Cheetahs").  See Declaration of Yadira Guzman, dated Apr. 6, 2015 (annexed as Ex. B to Swartz Decl.) ("Guzman Decl."), ¶ 2; Declaration of Daniris Espinal, dated Apr. 15, 2015 (annexed as Ex. C to Swartz Decl.) ("Espinal Decl."), ¶ 2; Declaration of Evelyn Rodriguez, dated Apr. 14, 2015 (annexed as Ex. D to Swartz Decl.) ("Rodriguez Decl."), ¶ 1; Declaration of Janine Bonderenko, dated Apr. 13, 2015 (annexed as Ex. E to Swartz Decl.) ("Bonderenko

---

[2]  See Notice of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed Apr. 17, 2015 (Docket # 18); Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed Apr. 17, 2015 (Docket # 19) ("Pl. Mem."); Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed Apr. 17, 2015 (Docket # 20) ("Swartz Decl."); Defendants [sic] Memorandum of Law in Oppossition [sic] to Plaintiff's Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated, filed May 22, 2015 (Docket # 26) ("Def. Mem."); Declaration of Rex Whitehorn in Opposition of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed May 22, 2015 (Docket # 27); Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed June 2, 2015 (Docket # 30); Supplemental Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA and for Expedited Discovery, filed June 2, 2015 (Docket # 31).

Decl."), ¶ 2; Declaration of Jennifer Eller, dated Apr. 9, 2015 (annexed as Ex. F to Swartz Decl.) ("Eller Decl."), ¶ 1; Declaration of Kayla Atkins, dated Apr. 14, 2015 (annexed as Ex. G to Swartz Decl.) ("Atkins Decl."), ¶ 2.  Plaintiffs all worked as "entertainer[s] / dancer[s]" at Cheetahs.[3]  Guzman Decl. ¶ 2; Espinal Decl. ¶ 2; Rodriguez Decl. ¶ 1; Bonderenko Decl. ¶ 2; Eller Decl. ¶ 1; Atkins Decl. ¶ 2.  Plaintiffs worked at Cheetahs during various periods between 2007 and 2013, with some plaintiffs having worked there for a few months and others having worked there as long as five years.  See Guzman Decl. ¶ 2; Espinal Decl. ¶ 2; Rodriguez Decl. ¶ 1; Bonderenko Decl. ¶ 2; Eller Decl. ¶ 1; Atkins Decl. ¶ 2.  Each plaintiff had weeks when she worked over 40 hours per week and days when she worked over 10 hours per day.  Guzman Decl. ¶ 3; Espinal Decl. ¶ 3; Rodriguez Decl. ¶ 2; Bonderenko Decl. ¶ 3; Eller Decl. ¶ 2; Atkins Decl. ¶ 3.  However, none of plaintiffs' hours worked were monitored or recorded by Cheetahs, and plaintiffs were never required to record the hours worked themselves.  Guzman Decl. ¶ 4; Espinal Decl. ¶ 4; Rodriguez Decl. ¶ 3; Bonderenko Decl. ¶ 4; Eller Decl. ¶ 3; Atkins Decl. ¶ 4.

During their employment, plaintiffs were not paid any hourly wages by Cheetahs for their work as entertainers.  Guzman Decl. ¶ 6; Espinal Decl. ¶ 6; Rodriguez Decl. ¶ 5; Bonderenko Decl. ¶ 12; Eller Decl. ¶ 5; Atkins Decl. ¶ 6.  When plaintiffs worked in excess of 40 hours per week, plaintiffs were not paid any overtime for the hours worked above 40.  Guzman Decl. ¶ 7; Espinal Decl. ¶ 7; Rodriguez Decl. ¶ 6; Bonderenko Decl. ¶ 15; Eller Decl. ¶ 6; Atkins Decl. ¶ 7.  When they worked in excess of 10 hours per day, plaintiffs were not paid any additional wages by Cheetahs.  Guzman Decl. ¶ 8; Espinal Decl. ¶ 8; Rodriguez Decl. ¶ 7; Bonderenko Decl. ¶ 14; Eller Decl. ¶ 7; Atkins Decl. ¶ 8.  Cheetahs also unilaterally determined the entertainers' method

---

[3] In their declarations, plaintiffs appear to use the terms "entertainer" and "dancer" interchangeably.

of compensation.  Guzman Decl. ¶ 24; Espinal Decl. ¶ 24; Rodriguez Decl. ¶ 23; Bonderenko Decl. ¶ 26; Eller Decl. ¶ 23; Atkins Decl. ¶ 24.

Plaintiffs were required to pay to Cheetahs a "house fee" of approximately $40 or $60 to $100 or $120 per shift worked, depending on the shift and time plaintiffs worked, a requirement that applied to all entertainers.  See Guzman Decl. ¶ 10; Espinal Decl. ¶ 10; Rodriguez Decl. ¶ 9; Bonderenko Decl. ¶ 5; Eller Decl. ¶ 8; Atkins Decl. ¶ 10.  Additionally, plaintiffs were also required to pay fees if they arrived late to work or if they did not work a scheduled shift, even if they provided advance notice, another requirement that applied to all entertainers.  Guzman Decl. ¶ 11; Espinal Decl. ¶ 11; Rodriguez Decl. ¶ 10; Bonderenko Decl. ¶ 6; Eller Decl. ¶ 9; Atkins Decl. ¶ 11.

Plaintiffs received tips from customers when they performed on stage and when they performed private "lap dances."  Guzman Decl. ¶ 12; Espinal Decl. ¶ 12; Rodriguez Decl. ¶ 11; Bonderenko Decl. ¶ 7; Eller Decl. ¶ 10; Atkins Decl. ¶ 12.  These tips were received directly from customers and did not pass through Cheetahs.  Guzman Decl. ¶ 12; Espinal Decl. ¶ 12; Rodriguez Decl. ¶ 11; Bonderenko Decl. ¶ 7; Eller Decl. ¶ 11; Atkins Decl. ¶ 12.  However, Cheetahs required plaintiffs to "tip out" other individuals who worked at Cheetahs, such as the "House Mom" and the DJ, each of whom plaintiffs paid at least $20 per shift.  Guzman Decl. ¶ 13; Espinal Decl. ¶ 13; Rodriguez Decl. ¶ 12; Bonderenko Decl. ¶ 8; Eller Decl. ¶ 12; Atkins Decl. ¶ 13.  However, both the DJs and the "House Moms" had little or no contact with customers.  Guzman Decl. ¶ 13; Espinal Decl. ¶ 13; Rodriguez Decl. ¶ 12; Bonderenko Decl. ¶ 9; Eller Decl. ¶ 12; Atkins Decl. ¶ 13.  Plaintiffs were also required to "tip out" the "private room hostess" when performing work in a private room.  Guzman Decl. ¶ 13; Espinal Decl. ¶ 13; Rodriguez Decl. ¶ 12; Bonderenko Decl. ¶ 8; Eller Decl. ¶ 12; Atkins Decl. ¶ 13.  Cheetahs

required all of its entertainers to similarly "tip out" the other individuals who worked at Cheetahs.  Guzman Decl. ¶ 13; Espinal Decl. ¶ 13; Rodriguez Decl. ¶ 14; Bonderenko Decl. ¶ 10; Eller Decl. ¶ 13; Atkins Decl. ¶ 13.

In addition to cash tips, plaintiffs also received tips in the form of "Cheetah Dollars," which customers could purchase directly from Cheetahs.  Guzman Decl. ¶ 14; Espinal Decl. ¶ 14; Rodriguez Decl. ¶ 13; Bonderenko Decl. ¶ 11; Eller Decl. ¶ 14; Atkins Decl. ¶ 14.  When plaintiffs exchanged the "Cheetah Dollars" for cash, Cheetahs retained 10% for itself.  See Guzman ¶ 14; Espinal Decl. ¶ 14; Rodriguez Decl. ¶ 13; Bonderenko Decl. ¶ 11; Eller Decl. ¶ 14; Atkins Decl. ¶ 14.

Throughout plaintiffs' periods of employment, Cheetahs enforced a uniform policy, which required all of the entertainers to wear club-approved outfits, hairstyles, and make-up, and to purchase, launder, and maintain their uniforms at their own expense.  Guzman Decl. ¶ 15; Espinal Decl. ¶ 15; Rodriguez Decl. ¶ 15; Bonderenko Decl. ¶ 17; Eller Decl. ¶ 15; Atkins Decl. ¶ 15.  Entertainers were required to wear approved bikini tops and bottoms when dancing on the "bar stage," to wear gowns or dresses when dancing on the main stage, and to wear high-heeled shoes at all times.  Guzman Decl. ¶ 15; Espinal Decl. ¶ 15; Rodriguez Decl. ¶ 15; Bonderenko Decl. ¶ 17; Eller Decl. ¶ 15; Atkins Decl. ¶ 15.  The uniforms required special treatment to maintain, and they were not worn as part of plaintiffs' ordinary wardrobes.  Guzman Decl. ¶ 15; Espinal Decl. ¶ 15; Rodriguez Decl. ¶ 15; Bonderenko Decl. ¶ 17; Eller Decl. ¶ 15; Atkins Decl. ¶ 15.  Cheetahs also sold clothing and shoes that entertainers could use to fulfill their uniform requirement.  Guzman Decl. ¶ 16; Espinal Decl. ¶ 16; Rodriguez Decl. ¶ 16; Bonderenko Decl. ¶ 18; Eller Decl. ¶ 16; Atkins Decl. ¶ 16.

Cheetahs supervised and controlled many aspects of the entertainers' working conditions.

Guzman Decl. ¶ 18; Espinal Decl. ¶ 18; Rodriguez Decl. ¶ 17; Bonderenko Decl. ¶ 20; Eller Decl. ¶ 18; Atkins Decl. ¶ 18.  Cheetahs imposed rules and requirements on all of its entertainers, including plaintiffs.  Guzman Decl. ¶ 19; Espinal Decl. ¶ 19; Rodriguez Decl. ¶ 18; Bonderenko Decl. ¶ 21; Eller Decl. ¶ 19; Atkins Decl. ¶ 19.  Cheetahs required entertainers to work on days and times according to a schedule set by Cheetahs, dance on stage for at least three songs in a row, remain on stage after dancing until the next entertainer arrived and they were excused by the DJ, maintain at least two sets of gowns and one bathing suit for each shift worked, and remain dressed in their uniforms until the end of their shift.  Guzman Decl. ¶¶ 19, 21; Espinal Decl. ¶¶ 19, 21; Rodriguez Decl. ¶¶ 18, 21; Bonderenko Decl. ¶¶ 21, 23; Eller Decl. ¶ 19; Atkins Decl. ¶¶ 19, 21.  Additionally, Cheetahs prohibited its entertainers from wearing certain types of uniforms or hairstyles, changing into street clothes before the end of their shifts, using glitter, carrying cell phones on the dance floor, chewing gum, leaving the club with a customer, leaving the stage before the next entertainer arrived, and discussing Cheetahs's operating procedures with customers.  Guzman Decl. ¶ 20; Espinal Decl. ¶ 20; Rodriguez Decl. ¶ 19; Bonderenko Decl. ¶ 22; Eller Decl. ¶ 20; Atkins Decl. ¶ 20.

Cheetahs also had rules and requirements regarding entertainers' schedules.  Guzman Decl. ¶ 22; Espinal Decl. ¶ 22; Bonderenko Decl. ¶ 24; Eller Decl. ¶ 21; Atkins Decl. ¶ 22.  Cheetahs scheduled the entertainers for a minimum of three days per week, and it required the entertainers to obtain permission to work shifts other than the ones scheduled.  Guzman Decl. ¶ 22; Espinal Decl. ¶ 22; Bonderenko Decl. ¶ 24; Eller Decl. ¶ 21; Atkins Decl. ¶ 22.  If plaintiffs arrived late, they were subject to a late fee and discipline, and if they did not show up at all, they were subject to a "missed-shift fine" and discipline.  Guzman Decl. ¶ 22; Espinal Decl. ¶ 22; Bonderenko Decl. ¶ 24; Eller Decl. ¶ 21; Atkins Decl. ¶ 22.  Plaintiffs were fined and

subject to discipline for failing to appear even if they provided advance notice to Cheetahs. Guzman Decl. ¶ 22; Espinal Decl. ¶ 22; Bonderenko Decl. ¶ 24; Eller Decl. ¶ 21; Atkins Decl. ¶ 22.

Plaintiffs' declarations state several times that they know that defendants committed the allegedly improper wage and hour practices with respect to all of the entertainers of Cheetahs. See Guzman Decl. ¶¶ 9-11, 13, 14, 21, 24, 27; Espinal Decl. ¶¶ 9-11, 13, 14, 21, 24, 27; Rodriguez Decl. ¶¶ 8-10, 14, 21, 23, 24; Bonderenko Decl. ¶¶ 5, 6, 10, 16, 23, 26, 27; Eller Decl. ¶¶ 5, 8, 13, 14, 23, 24; Atkins Decl. ¶¶ 9-11, 13, 14, 21, 24, 25. In many instances, plaintiffs give the names of other individuals who worked at the club with whom they had conversations about these wage and hour practices. See Guzman Decl. ¶¶ 9-11, 13, 14, 21, 24, 27; Espinal Decl. ¶¶ 9-11, 13, 14, 21, 24, 27.

## II.   APPLICABLE LEGAL PRINCIPLES

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act.'" Reich v. N.Y.C. Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (alteration in original) (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)).

Section 216(b) of the FLSA provides, in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the statute does not prescribe any procedures for approval of collective actions, § 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of s 16(b) of the Act, 29 U.S.C. s 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted).  Orders authorizing notice are sometimes referred to as orders "certifying" a collective action, even though the FLSA does not contain a certification mechanism.  Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  The act of "certifying" a collective action, however, means only that a court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id.  The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

      The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action.  Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).  Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made." Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted). Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment." Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (citations and

internal quotation marks omitted).

The Second Circuit has endorsed a "two-step process" for approval of an FLSA collective action:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. [Myers,] 624 F.[3]d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. Id.

Glatt v. Fox Searchlight Pictures, Inc., — F.3d —, 2015 WL 4033018, at *9 (2d Cir. July 2, 2015). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citing cases); accord Boutros v. JTC Painting & Decorating Corp., 2013 WL 3110943, at *2 (S.D.N.Y. June 19, 2013); Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012). In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen, 841 F. Supp. 2d at 800.

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are

similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488, at *4; accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010).

III.  ANALYSIS

   A.  Approval as a Collective Action

Plaintiffs argue that they are similarly situated to the other entertainers who worked at Cheetahs because Cheetahs subjected plaintiffs and the other entertainers to the same compensation policies, which plaintiffs allege violate the FLSA. See Pl. Mem. at 9-11. Defendants argue that plaintiffs have not satisfied their burden for conditional approval because plaintiffs' declarations do not make a sufficient factual showing that there are similarly situated individuals, the existence of varying contractual agreements between defendants and its workers establishes a lack of substantial similarity, the parties need to engage in discovery to clarify the facts, and some of the named plaintiffs are not representative of the proposed opt-in plaintiffs. See Def. Mem. at 1, 2, 5-11. Defendants also assert that several of the named plaintiffs are bound by arbitration agreements, id. at 15, raise various challenges to the factual assertions contained in plaintiffs' declarations, see id. at 1-11, and argue that plaintiffs are not "employees" under the FLSA, see id. at 12.

To demonstrate that a proposed group of employees is "similarly situated" to a plaintiff requires only a "modest factual showing." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Nonetheless, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance." Id.

Defendants contend that plaintiffs' declarations are insufficient in several respects. First, they argue that the declarations are insufficient because they set forth "[o]nly broad conclusive

[sic] assertions." Def. Mem. at 8. In support, defendants cite to certain paragraphs of plaintiffs' declarations that are somewhat broad and conclusory. Id. at 8 n.6 (citing Guzman Decl. ¶ 23; Espinal Decl. ¶ 27; Eller Decl. ¶ 24; Atkins Decl. ¶ 23; Rodriguez Decl. ¶ 25; Bonderenko Decl. ¶ 25). But the existence of some conclusory assertions does not negate the more specific factual statements contained in plaintiffs' declarations, which provide an ample showing that the other entertainers at Cheetahs are similarly situated with respect to plaintiffs' allegations that Cheetahs violated the FLSA. Six plaintiffs have submitted a declarations that state, inter alia, that (1) the declarant was not paid any hourly wages, (2) she was required to share her tips with workers who did not provide customer service, (3) defendants retained a portion of plaintiffs' tips, (4) she was required to pay "house fees" each shift, and (5) she was not reimbursed for uniform-related expenses. See Guzman Decl. ¶¶ 6, 10, 13-15; Espinal Decl. ¶¶ 6, 10, 13-15; Rodriguez Decl. ¶¶ 5, 9, 12, 13, 15; Bonderenko Decl. ¶¶ 5, 8, 9, 11, 12, 17; Eller Decl. ¶¶ 5, 8, 12, 14, 15; Atkins Decl. ¶¶ 6, 10, 13-15. As to the first four allegations, plaintiffs state that their own personal knowledge and conversations with other individuals at Cheetahs, including the other plaintiffs as well as six other workers identified by their initials or their first name, have allowed plaintiffs to conclude that these practices applied to all of the entertainers at Cheetahs. See Guzman Decl. ¶¶ 9, 10, 13, 14; Espinal Decl. ¶¶ 9, 10, 13, 14; Rodriguez Decl. ¶¶ 8, 9, 14; Bonderenko Decl. ¶¶ 5, 10, 16; Eller Decl. ¶¶ 5, 8, 13, 14; Atkins Decl. ¶¶ 9, 10, 13, 14. From these statements, the Court "can fairly infer" that other entertainers labored under similar working conditions and thus suffered "the same violations of the FLSA." She Jian Guo v. Tommy's Sushi Inc., 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (citing Caspar v. Personal Touch Moving, Inc., 2014 WL 4593944, at *5 (S.D.N.Y. Sept. 15, 2014)).

Defendants contend that the declarations demonstrate that plaintiffs lack "personal

knowledge" that other entertainers are similarly situated and therefore the court should refuse to consider them.  Def. Mem. at 9-10.  However, "courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice—an approach that is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit." Ramos v. Platt, 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) (citation and internal quotation marks omitted); see id. (plaintiff met his burden "even though [his] declaration includes hearsay regarding other potential opt-in plaintiffs' overtime pay"); accord Romero v. ABCZ Corp., 2015 WL 2069870, at *2 (S.D.N.Y. Apr. 28, 2015); Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 449 (S.D.N.Y. 2013).  Importantly, all five plaintiffs observed essentially identical violations at the same location during the same time periods.  "It is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA." Cordova v. SCCF, Inc., 2014 WL 3512820, at *4 (S.D.N.Y. July 16, 2014) (citations omitted).  Indeed, in some instances, a single affidavit may be sufficient.  See Cheng Chung Liang v. J.C. Broadway Rest., Inc., 2013 WL 2284882, at *2 (S.D.N.Y. May 23, 2013) ("For the purposes of this motion, . . . plaintiffs' evidence—in the form of [one employee's] affidavit—is sufficient to establish that . . . there may be class members with whom he is similarly situated."); see also Gonzalez v. Scalinatella, Inc., 2013 WL 6171311, at *2 (S.D.N.Y. Nov. 25, 2013) ("Courts in this district have approved conditional collective action certification based on the facts alleged in the complaint and one accompanying affidavit.") (collecting cases).  Additionally, plaintiffs have corroborated their allegations through their conversations with other individuals at Cheetahs.  Some of these

individuals are specifically named. See Guzman Decl. ¶¶ 9-11, 13, 14, 21, 24, 27; Espinal Decl. ¶¶ 9-11, 13, 14, 21, 24, 27. "While it would be helpful to have the time and dates of [these] conversations, it is not surprising that plaintiffs would be unable to recall such specifics." Garcia v. Spectrum of Creations Inc., 2015 WL 2078222, at *6 (S.D.N.Y. May 4, 2015).

Defendants assert that case law supports their argument that the evidentiary showing in this case is insufficient. See Def. Mem. at 8-9. But none of the cases they cite involved evidence similar to what has been provided here. In Silva v. Gordon Gaming Corp., 2006 WL 3542716 (D. Nev. Sept. 27, 2006), there was but a single declaration, submitted by the plaintiff, which asserted only "on information and belief" that other employees were subject to the same unlawful policies. Id. at *3. In Bernard v. Household International, Inc., 231 F. Supp. 2d 433 (E.D. Va. 2002), the court found that plaintiffs had no personal knowledge of FLSA violations at offices where the plaintiffs did not work. Id. at 435-36. Notably, Bernard found that employees within the two offices where the plaintiffs worked were similarly situated. Id. at 436. In Briggs v. United States, 54 Fed. Cl. 205 (2002), the court rejected an affidavit from the plaintiffs' attorney who had claimed that he was "aware of" workers in other states who had failed to receive overtime pay. Id. at 207. In Barfield v. New York City Health & Hospitals Corp., 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005), the court found that the plaintiff had presented "no evidence whatever" that the challenged practice was pursuant to a policy of the defendants. Id. at *1. By contrast, the evidence presented here as to Cheetahs's treatment of other workers is extensive and corroborated.

Defendants argue that the "existence of several hundred various dancer agreements which varies from Plaintiffs and potential class, [sic] members clearly establishes the lack of substantial similarity [sic] situated members." Def. Mem. at 6-7. Defendants assert there are

four categories of dancers: "Dancers without contracts," "Dancers with a contract containing a simplified Arbitration provision," "Dancers with a contract containing a more substantial Arbitration provision and a class action wavier [sic]," and "Dancers with a lease agreement with a booking agency." Id. at 3. Even assuming that the type of agreement varies from entertainer to entertainer, the Court does not see, and defendants fail to explain, how this has any bearing on whether the entertainers may be similarly situated with respect to plaintiffs allegations that the FLSA has been violated.[4] "Other factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" and "[s]uch variances are more appropriately analyzed during the second-decertification-stage." Kassman v. KPMG LLP, 2014 WL 3298884, at *6 (S.D.N.Y. July 8, 2014) (internal citations and quotation marks omitted).

Nor does the fact that some of the contracts have arbitration provisions, simplified or not, create any differences between plaintiffs and other entertainers with respect to whether defendants violated the FLSA. "[C]ourts have consistently held that the existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'" Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (quoting D'Antuono v. C & G of Groton, Inc., 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011)) (additional citations omitted); accord Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012); see also Lloyd v. J.P. Morgan Chase & Co., 2014 WL 2109903, at *7 (S.D.N.Y. Apr. 1, 2014) ("[T]he precedent in this District . . . holds that the existence of an arbitration agreement is irrelevant at the conditional certification stage.");

---

[4] Defendants contend that the contractual agreements entered into by plaintiffs show that plaintiffs had to supply their own costumes and that Cheetahs had no control over their "performances, expression or costumes." Id. at 4-5. These factual disputes are not properly decided at this stage, however, as discussed further below.

Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) ("The relevant issue here, however, is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay . . . .") (alteration in original) (citations and internal quotation marks omitted). Additionally, not all entertainers had contracts with arbitration agreements, as is evidenced by the fact that defendants have not produced such an agreement for Guzman. Moreover, defendants have not moved to compel arbitration of any of the named plaintiffs for whom they assert arbitration agreements exist. Thus, the validity of the arbitration clause defense is speculative at this stage.

Defendants request that "the Court . . . direct the parties to further discovery for purposes of clarifying the[] facts . . . and to identify if in fact these Plaintiffs are similarly situated." Def. Mem. at 1-2. Such a request is inappropriate. "Because courts do not weigh the merits of the claim, extensive discovery is not necessary at the notice stage." Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) (citations omitted); accord Kassman, 2014 WL 3298884, at *6. As previously noted, "[a]t the first stage, 'any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification.'" Amador v. Morgan Stanley & Co. LLC, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (quoting Lynch, 491 F. Supp. 2d at 369) (additional citations omitted); see also Hernandez v. Merrill Lynch & Co., Inc., 2012 WL 1193836, at *4 (S.D.N.Y. Apr. 6, 2012) ("The burden imposed at [the] first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs.") (emphasis in original); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action

15

and authorizes notice."). Thus, defendants' request is denied.

Defendants also argue that some of the named plaintiffs did not perform at Cheetahs for more than one year, and therefore it is "not fair" to permit them "as representatives of the purported class as clearly they did not perform for nearly enough time to attempt to state that their experience was representative of any class." Def. Mem. at 11. This argument, however, conflates the requirements for conditional approval under 29 U.S.C. § 216(b) with those for class certification under Fed. R. Civ. P. 23. While Rule 23 requires, inter alia, "a class representative or representatives who adequately represent the interests of the class," Myers, 624 F.3d at 547 (citing Fed. R. Civ. P. 23(a)), conditional approval under § 216(b) requires only a showing that "potential opt-in plaintiffs may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," id. at 555 (citations omitted). Thus, plaintiffs need only show that "they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Sbarro, 982 F. Supp. at 261); see also Lynch, 491 F. Supp. 2d at 369 ("[T]he standard for class certification under Federal Rule of Civil Procedure 23 is not relevant to an FLSA collective action. Unlike Rule 23, section 216(b) of the FLSA requires no showing of . . . representativeness.") (citing La Belle Farm, 239 F.R.D. at 369).

The remainder of defendants' arguments, including that plaintiffs are not employees under the FLSA, "attack the merits of the case, raise factual disputes, or question the credibility of Plaintiffs' declarations. These are not issues that can be addressed at this juncture." Flood v. Carlson Rests. Inc., 2015 WL 260436, at *5 (S.D.N.Y. Jan. 20, 2015) (citations and footnote omitted); see also Benitez v. Demco of Riverdale, LLC, 2015 WL 3780019, at *4 (S.D.N.Y. June 15, 2015) ("The court need not evaluate the merits of the plaintiffs' claims to determine if a 'definable group' of 'similarly situated' plaintiffs can exist.") (quoting Sbarro, 982 F. Supp. 2d

at 262); Lynch, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") (citation omitted).

For these reasons, plaintiffs' motion for conditional approval of a collective action is granted.

### B. Equitable Tolling

Plaintiffs request the Court toll the FLSA statute of limitations from the date their motion for conditional approval was filed until plaintiffs are able to send notice to potential opt-in plaintiffs in order to "avoid inequitable circumstances." Pl. Mem. at 20-21. "As a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)); accord Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003); Mark v. Gawker Media LLC, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014); Estate of Mandarino v. Mandarino, 699 F. Supp. 2d 646, 652 (S.D.N.Y. 2010). "'Equitable tolling applies only in the rare and exceptional circumstance.'" Bertin v. United States, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam)). "When a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." Mark, 2014 WL 5557489, at *2 (citing Ouedraogo v. A-1 Int'l Courier Serv., Inc., 2013 WL 3466810, at *4 (S.D.N.Y. July 8, 2013)).

The only ground advanced by plaintiffs in support of their request for equitable tolling is that they have acted with diligence in pursuing their FLSA claims. See Pl. Mem. at 20-21. They

assert that the Court should toll the limitations period simply because plaintiffs filed their motion for conditional approval "less than 6 weeks after appearing for an initial conference and less than 4 months after filing" one of the complaints. Id. at 21. While some Courts have found that the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is enough to grant equitable tolling, see, e.g., Flood, 2015 WL 260436, at *6; McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012), others have required a stronger showing — for example, that the delay in adjudicating the motion was significant and beyond the control of the parties, or that it could result in significant prejudice to potential class members, see Hart v. Crab Addison, Inc., 2015 WL 365785, at *6 (W.D.N.Y. Jan. 27, 2015); see also Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (equitable tolling appropriate where motion was fully briefed for "more than seven months").

      We do not believe that we have sufficient information to make a finding that the elements of equitable tolling have been met as to all future plaintiffs in this case, especially the requirement that the future plaintiffs demonstrate "extraordinary circumstances." To the extent that case law has suggests that the time to adjudicate a motion for conditional approval by itself provides the basis for meeting either of the prongs of the equitable tolling analysis, we note that the delay between the filing of plaintiffs' motion and its adjudication today — about three-and-a-half months — is not of a magnitude that would justify tolling. See Mark, 2014 WL 5557489, at *2-3 (11 month delay in resolving plaintiffs' conditional approval motion not "extraordinary" and thus did not justify equitable tolling from the date the motion was filed). Accordingly, plaintiffs' request to equitably toll the statute of limitations is denied "'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later

date.'" She Jian Guo, 2014 WL 5314822, at *6 (quoting Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013)).

IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional approval of a collective action (Docket # 18) is granted. With respect to the issues that have been raised as to the content of the proposed notice, the Court will address these issues at a conference that will be the subject of a separate Order.

SO ORDERED.

Dated: July 30, 2015
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge